433 P.2d 22

**STATE of Arizona, Appellee,**

**v.**

**Edgar HUNTER, Appellant.**

**No. 8991–PR.**

Supreme Court of Arizona.

In Banc.

Nov. 2, 1967.

Darrell F. Smith, Atty. Gen., J. Stephen Simon, Sp. Asst. Atty. Gen., for appellee.

Barry Allen Reiss, Phoenix, for appellant.

McFARLAND, Vice Chief Justice:

The petitioner-defendant, Edgar Hunter, was charged with burglary of an undesignated degree, and was tried and found guilty of the crime of burglary of the first degree in violation of A.R.S. § 13–302. The defendant was sentenced by the Superior Court, Maricopa County, to serve a term from two to four years in the Arizona State Prison. From the verdict and judgment of conviction he appealed to the Arizona Court of Appeals, Division One, which affirmed the Superior Court's judgment of conviction and sentence as reported in State v. Hunter, 5 Ariz.App. 112, 423 P.2d 727. We granted defendant's petition for review pursuant to A.R.S. § 12–120.24.

The evidence showed that certain articles were removed from a construction-site trailer in Phoenix, Arizona sometime between the hour of 5:30 P.M. on May 27 and 6:30 A.M. on May 28, 1965. The defendant personally sold some of the articles which had been removed and participated in the sale of others. The defendant first stated to the police that two men had left the items in question with him four or five days before the sales. Defendant then changed that former version by stating that the men had left the goods with him on the night of May 27th instead of four or five days earlier. Thereafter in a still different account of the manner in which he came into possession of the goods, defendant stated to the police that on the evening of the 27th of May he first removed the items from a parked car and sold them on the following day. At the trial he testified that he had gone over to a friend's home after work on the 28th of May where he obtained the goods and that he thereafter assisted in the sales. He also testified in regard to an alibi which was supported by the testimony of his sister and a friend. The defendant first raises the question of the voluntariness of his various statements, which were made to the police officer, George M. Loy, on June 18 and June 22 in 1965. The Court of Appeals held that the trial court had not made an affirmative finding as to the voluntariness of the statements at the conclusion of the original hearing held out of the presence of the jury and referred the case back to the trial court for this limited purpose. On remand the trial court made a definite determination that the defendant's statements were voluntarily made.

The defendant makes no objection to the procedure used as provided for in the Court of Appeals' order or by the trial court in making its determination, but urges:

(1) that the statements were not voluntary in that defendant was not properly advised that if he could not afford to retain counsel of his own choosing the court would appoint a lawyer to represent him; and

(2) that the evidence as to voluntariness was introduced by means of leading questions propounded by the prosecution which called for improper conclusions of the witness, Police Officer Loy, and that the trial court's admission of answers to these questions constituted an abuse of discretion amounting to prejudicial error.

These same objections were made in his opening brief and in his objections to the findings of the trial court on remand, and are also set forth in his motion for rehearing. The defendant's contention that he was not properly advised of his rights is without merit. In our opinion the evidence sustains the trial court's determination that defendant's statements were voluntarily made. The defendant was neither threatened nor coerced in any way. No promises nor inducements of any kind were made to defendant. He was advised that he had a right to remain silent, that anything he said could be used against him in court and that he was entitled to counsel. The defendant did not at any time

request counsel, nor was he refused counsel. The evidence discloses that the statements were voluntary and properly admitted. The controlling law in this case on appeal is to be derived from Escobedo v. State of Illinois, 378 U.S. 478, 479, 84 S.Ct. 1758, 12 L.Ed.2d 977. The case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, is not applicable to the instant case in view of the United States Supreme Court's decision of Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, which held that the Miranda decision was not to be applied retroactively to trials begun before the Miranda decision. The questions in regard to rights to counsel must be determined under Escobedo and other prior decisions. State v. Stelzriede, 101 Ariz. 385, 420 P.2d 170, and State v. Intogna, 101 Ariz. 275, 419 P.2d 59.

The defendant also asserts that prejudicial error occurred when the court allowed the alleged leading questions to be asked of the police officer during direct examination. Some of the typical questions to which defendant objected are:

"Q. Did you promise him anything if he would talk to you?"

"Q. During the time you were talking to him did you or anyone else in your presence threaten him in any manner?"

■■ Most of these questions were foundational in nature and did not suggest any particular answer. Not all questions which can be answered with a simple "yes" or "no" can be validly objected to as leading. State v. Simoneau, 98 Ariz. 2, 401 P.2d 404; Section 44 Udall's Arizona Law of Evidence. We find the trial court did not abuse its discretion in permitting the questions and answers. State v. Pierce, 59 Ariz. 411, 129 P.2d 916; State v. King, 66 Ariz. 42, 182 P.2d 915.

■ The defendant also contends that the trial court erred in refusing his requested instruction which was similar to that given in cases where an accomplice's testimony is introduced and the jury is in-

structed as to the degree of corroborating circumstances required to sustain a verdict of guilty. There was clearly no accomplice's testimony introduced, and the trial court did not err in refusing defendant's requested instruction.

■■ The next question is whether the evidence supports the verdict. In State v. Jackson, 101 Ariz. 399, 420 P.2d 270, we said:

"It is also almost universally recognized that proof of possession by an accused, of recently stolen property, warrants an inference that he was the taker. * * *"

Possession of recently stolen property standing alone is not sufficient to support a verdict of burglary. State v. Pederson, 102 Ariz. 60, 424 P.2d 810. However, a defendant's possession of stolen property shortly after a burglary, coupled with contradictory and unsatisfactory explanations which the jury under the evidence could find to be false, is sufficient to support a verdict of burglary. State v. Pederson, supra; Murphy v. State, 50 Ariz. 481, 73 P.2d 110; Porris and Sanchez v. State, 30 Ariz. 442, 247 P. 1101; Taylor v. Territory, 7 Ariz. 234, 64 P. 423; People v. Blackburn, 65 Cal.App.2d 538, 151 P.2d 24; Ballard v. State, 68 Okl.Cr. 39, 95 P.2d 239; Patton v. State, 54 Okl.Cr. 393, 22 P.2d 116; People v. Bucnis, 405 Ill. 568, 92 N.E.2d 158; People v. Norris, 362 Ill. 492, 200 N.E. 330. The facts in the instant case fall in this category.

■■ Since the evidence is sufficient to support the verdict and judgment that defendant is guilty of the crime of burglary, the only remaining question is the sufficiency of the evidence to support the verdict and judgment of first-degree burglary. Upon reviewing the sufficiency of the evidence to sustain a conviction, this court will view the evidence in the light most favorable to the state, and will resolve all reasonable inferences unfavorably to defendant. State v. George, 95 Ariz. 366, 368, 390 P.2d 899. There must be sufficient evidence to support substantially the

verdict. State v. Bearden, 99 Ariz. 1, 405 P.2d 885.

At the time of the commission of the alleged offense, burglary was defined in Arizona Revised Statutes as follows:

"§ 13–302 * * *

"A. A person entering a building, * * trailer or semitrailer, with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary.

"B. Burglary committed in the nighttime is burglary of the first degree, punishable by imprisonment in the state prison for not less than one nor more than fifteen years. Burglary committed in the daytime is burglary of the second degree, punishable by imprisonment in the state prison for not to exceed five years.

 * * * * * *

"§ 13–301 * * *

"In this article, unless the context otherwise requires:

 * * * * * *

"2. 'Nighttime' means the period between sunset and sunrise."

Defendant was informed against for burglary of an undesignated degree under 17 A.R.S. Rules of Criminal Procedure, Rule 142. The jury was instructed as to both degrees of burglary, and defendant received a verdict of guilty of first degree burglary which is burglary committed in the "nighttime." We are concerned only with the evidence relating to the time the burglary occurred with respect to "nighttime" and "daytime."

■ Defendant requests that we take judicial notice of the time of sunset and sunrise in making the determination as to whether the burglary was committed in the daytime or nighttime. In view of the request of defendant, and under the facts and circumstances of this case, we hold it is proper for this court to take such judicial notice. We therefore take judicial notice

that in Phoenix on May 27, 1965, sunset occurred at 7:29 P. M., and that sunrise on May 28, 1965, occurred at 5:21 A.M. Southwestern Freight Lines, Ltd., v. Floyd, 58 Ariz. 249, 119 P.2d 120; Porris v. State, supra; Taylor v. Territory, supra.

The evidence discloses that a construction site trailer in Phoenix had been burglarized some time between the hour of 5:30 P.M. on May 27, 1965, and 6:30 A.M. on May 28, 1965. This constitutes the totality of the evidence offered by the prosecution pertaining to the period of time within which the burglary was committed. There was not one shred of positive or affirmative evidence offered by the state to show the actual time the burglary was committed between 5:30 P.M. May 27, 1965 and 6:30 A.M. May 28, 1965, which was in both daytime and nighttime.

The only other evidence even remotely bearing on the issue of the time the offense was committed arises only by negative inference as gleaned from the different testimony which constituted Hunter's alibi defense.

Two of the defendant's witnesses stated they had been watching television with the defendant at his sister's house from early evening on May 27 which they stated was from 6:00 or 6:30 P.M. until the defendant went to bed between 10:00 and 11:00 P.M. the same evening, that shortly thereafter one of the witnesses had left the house between 11:00 and 11:15. The other witness, defendant's sister, had testified that she was a light sleeper and that she had neither heard the defendant get up nor leave the house any time during that night or on the morning of May 28 until 3:30 A.M. when defendant got up, as he usually did, to go to work as a vegetable packer. The defendant also testified as to the same sequence of events. Defense testimony disclosed that defendant got his usual ride to work at about 4:00 A.M. with some of his coworkers, and that he was at work the morning of May 28th, and did not get off work until about 9:15 A.M.

Even if true, the alibi evidence in no way resolves beyond a reasonable doubt that the construction trailer was broken into in the nighttime. There was no evidence whatsoever to indicate defendant's whereabouts between 5:30 P.M. and 6:00 or 6:30 P.M. which was still daytime. There was a gap in the alibi evidence as both witnesses place the time they watched television with defendant at 6:00 or 6:30 P.M. to 10:00 or 11:00 P.M. This left from 5:30 P.M. to 6:00 or 6:30 P.M. that defendant's whereabouts in the daytime was unaccounted for—a time within which he could have committed the burglary.

The fact that a defendant offers an alibi defense does not relieve the state of the burden of proving beyond a reasonable doubt every element of the offense with which a defendant is charged. The defendant does not have the burden of proving the time of day in which he committed a burglary when his whole defense is that he did not in fact commit the burglary at any time. "Alibi" as a defense merely attempts to prove facts showing accused's absence from the scene of the alleged crime at the time of its commission making it impossible for him to have committed it. ·

Regardless of what part of the alibi defense the jury believed or disbelieved, the state was not relieved of the burden of proving every element of the crime. To prove the crime of burglary in the first degree the state must prove it was committed in the nighttime.

The span of time within which the burglary occurred between 5:30 P.M. on May 27 and 6:30 A.M. May 28 was approximately thirteen hours. The span of time within which nighttime occurred as between sunset at 7:29 P.M. on May 27 and sunrise at 5:21 A.M. on May 28 was approximately ten hours. This left about three hours of daytime in which the burglary might have been committed. The evidence is insufficient to show beyond a reasonable doubt that the burglary occurred during the nighttime; hence, neither the verdict nor judgment of burglary in the first degree is supported by the evidence. The general rule is announced in 13 Am. Jur.2d § 51, at page 352:

"If there is no evidence as to the time of burglarious entry, it cannot be assumed that entry was made at night."

See also State v. Cone, 171 Kan. 344, 232 P.2d 470.

When the evidence proves beyond a reasonable doubt that the crime of burglary has been committed by a defendant, but there is a reasonable doubt as to whether the burglary occurred in the nighttime, it is the duty of the jury to resolve that doubt in favor of the defendant and return a verdict of burglary of the second degree. People v. Wozniak, 167 Cal.App.2d 448, 334 P.2d 689. The question then in the instant case is the effect of the verdict of first-degree burglary.

In State v. Haggard, 89 Idaho 217, 404 P.2d 580, under a statute similar to A.R.S. § 13–1716, the court held:

"In obedience to the command of I.C. § 19–2311, the jury found the degree of the crime, that is, burglary of the first degree. The fact that this court finds the evidence insufficient to sustain the jury finding that the offense was committed in the nighttime does not affect or cast doubt upon the jury's verdict that the defendant was guilty of burglary of the second degree. In such case the statute authorizes this court to modify the judgment based upon the verdict by reducing the conviction from first degree to second degree. I.C. § 19–2821. This court has not hesitated to exercise such authority or to assert its inherent power to make the judgment conform to law and justice.

\* \* \* \* \* \*

" \* \* \* [T]he judgment \* \* \* is modified by reducing the conviction to burglary of the second degree, and the cause is remanded to the district court with instructions to vacate the judgment pronounced on that count, and enter judgment thereon as on a conviction of bur-

478

glary of the second degree." 404 P.2d 580, 588, 589.

 A charge of burglary of an undesignated degree includes both burglary in the first and second degrees. A conviction of burglary in the first degree is a conviction of burglary. This is the crime with which defendant was charged and convicted. The finding as to degree is for the purpose of fixing his punishment. The time of day becomes important in the determination of the degree of the offense as provided by A.R.S. § 13–302, and the degree of the offense of burglary goes only to the issue of punishment. The trial record supports beyond a reasonable doubt defendant's guilt of burglary as the jury by its verdict found. The only doubt which arises from the record concerns the time of day when the offense was committed. This doubt does not affect the conclusiveness of the jury's verdict of burglary, and, since the verdict of first degree cannot be sustained, the verdict must be given effect as a verdict of guilty of burglary of the second degree. State v. Sexton, 4 Ariz. App. 41, 417 P.2d 554; People v. Ford, 60 Cal.2d 772, 36 Cal.Rptr. 620, 388 P.2d 892; People v. Wozniak, supra; People v. Gilbert, 188 Cal.App.2d 723, 10 Cal.Rptr. 799 (2d Dist. 1961).

 This court has the authority under A.R.S. § 13–1716 and A.R.S. § 13–1717 to modify both the judgment and the sentence; however, in the instant case it is our opinion that the trial court having heard the evidence and having had the opportunity of observing defendant is in a better position to determine the sentence. We, therefore, pursuant to A.R.S. § 13–1716, modify the conviction and judgment to second-degree burglary. The decision of the court of appeals is hereby vacated. Judgment of conviction as modified is affirmed, and the case is remanded to the trial court for the purpose of passing sentence.

BERNSTEIN, C. J., and STRUCK-MEYER, UDALL and LOCKWOOD, JJ., concur.